IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RUSSELL VICKERY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOCTOR GUY AUGUSTIN,<br><br>　　　　Defendant. | CIVIL ACTION NO.: 5:18-cv-98 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Prosecution, Plaintiff's Motion for Summary Judgment, and Defendant's Motion for Summary Judgment. Docs. 39, 41, 50. For the reasons discussed below, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis status* on appeal. Because I recommend the Court grant summary judgment in Defendant's favor, I further **RECOMMEND** the Court **DENY as moot** Defendant's Motion to Dismiss.[1] I also **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Joinder asserted within his Motion for Summary Judgment.

---

[1] Even though the Court elects not to directly rule on Defendant's Motion to Dismiss, the Court notes a refusal to attend a deposition is in direct violation of this Court's March 24, 2020 Order. Doc. 14 at 4.

## BACKGROUND

Plaintiff brought this 42 U.S.C. § 1983 action relating to his medical treatment while incarcerated at Coffee Correctional Facility ("CCF").  Doc. 1.  Plaintiff amended his Complaint once as a matter of course prior to the Court conducting a frivolity screening.  Docs. 9, 11, 12.  After conducting the requisite frivolity review of the Amended Complaint, the Court dismissed all of Plaintiff's claims for monetary damages against Defendants sued in their official capacities and all claims against Defendants Stewart and Lewis.  Doc. 13, 28.  Thus, the only claims which remain pending are a deliberate indifference claim and an Americans with Disabilities Act ("ADA") claim against Defendant Augustin.  After the Court conducted frivolity review, Plaintiff filed another motion to amend, which the Court granted.  Docs. 16, 23.  When granting the motion to amend, the Court noted Plaintiff's Second Amended Complaint was nearly identical to his previous Complaints.  Doc. 23.

In his Second Amended Complaint, Plaintiff alleges Defendant Augustin violated his Eighth Amendment rights by denying him access to a specialist and other treatment.  Doc. 16-1 at 6–7.  In his Second Amended Complaint, Plaintiff only seeks reimbursement of court costs and declaratory and injunctive relief.  Id. at 10–11.  The Court notes Plaintiff's Second Amended Complaint is a sworn Complaint.  Id.  The Court expressly warned Plaintiff he "may not rest on the allegations in [his] pleadings alone" for summary judgment purposes.  Doc. 42.  However, the Court still considers the Second Amended Complaint as evidence because it is a sworn Complaint and Plaintiff cites to it in his Motion for Summary Judgment and response brief.

The Court also notes Plaintiff was advised to notify the Court of any change in address.  Doc. 4 at 3.  However, this Court's previous Order was returned with the note "RTS Released,"

indicating he is no longer incarcerated. Doc. 62. Thus, Plaintiff has violated this Court's previous Order by not notifying the Court of his change in address.

## UNDISPUTED MATERIAL FACTS[2]

Dr. Augustin was a physician at CCF from April 2014 through October 2015 and then again from December 2016 through August 2019. Doc. 50-1 at 1. Dr. Augustin is no longer a physician at any prison within the Georgia Department of Corrections ("GDC"). Id. Plaintiff arrived at CCF on September 22, 2015. Id. During the time Dr. Augstin was not working at CCF, Plaintiff was under the care of other medical providers. Id. at 1–2. Some time after filing this lawsuit, Plaintiff was transferred to Jefferson County Correctional Institution ("JCCI"). Id. at 2. Plaintiff was transferred again to Hancock State Prison and has apparently since been released from prison. Id.; doc. 62.

The GDC provides a protocol prison doctors must comply with when monitoring and evaluating inmates with Hepatitis C Virus ("HCV") and determining whether they are eligible for antiviral HCV therapy. Doc. 50-1 at 2. During the timeframe in which Plaintiff was housed at CCF, two sets of GDC HCV guidelines were in effect, a set issued in 2012 and an update issued in 2016. Id. These guidelines set forth specific parameters, such as viral load test scores, liver enzyme levels, physical examinations, and disqualifying criteria or contraindications, which are evaluated to determine whether an inmate qualifies to receive antiviral treatment therapy for HCV. Id.

---

[2] Plaintiff has not specifically admitted or denied Defendant's statement of facts. Thus, all of the material facts Plaintiff has not addressed are deemed admitted under this Court's Local Rules. Local R. 56.1. After reviewing Plaintiff's response brief and Motion for Summary Judgment, the Court concludes Plaintiff does not dispute any of the facts presented by Defendant. Plaintiff does not dispute Dr. Augustin followed the relevant guidelines. Instead, he asserts the guidelines themselves violate the ADA and Eighth Amendment. Doc. 41 at 9; Doc. 54 at 8.

Plaintiff first informed the CCF medical staff he had HCV upon his arrival to CCF.  Id.  Plaintiff was then scheduled for and provided a follow-up visit on October 15, 2015.  Id. at 3.  This visit confirmed Plaintiff was infected with HCV and that his HCV condition was "Fair."  Id.  Plaintiff was subsequently enrolled in the Chronic Care Clinic ("CCC") at the facility.  Id.  Through the CCC, Plaintiff's HCV was regularly monitored.  Id.  On April 12, 2016, Plaintiff was seen by Latasha Gilliard in the CCC, and his HCV status was noted to be "Good," "Stable," and "Improving."  Id.  Dr. Augustin saw Plaintiff in the CCC on February 20, 2018.  Id.  Plaintiff's APRI score was 0.29, his AST score was 24, and his ALT score was 40.[3]  Id.  At this time, Plaintiff's HCV was "good" and "stable."  Id. at 4.  During Plaintiff's next visit in the CCC, his AST score was 22 and his ALT score was 38.  Id.  During this visit, his HCV was "fair" and "stable."  Id.  Then, on February 13, 2019, Plaintiff's AST score was 22 and his ALT score was 32.  Id.  During this visit, his HCV was "good" and "stable."  Id.  All of Plaintiff's laboratory reslts and liver enzyme levels were normal on all of these visits, as if he did not have HCV at all.  Id.

During each CCC visit with Dr. Augustin, Dr. Augustin also conducted a physical examination of Plaintiff.  Id.  At no time during Dr. Augustin's treatment of Plaintiff did Plaintiff qualify for the antiviral therapy outlined in the GDC guidelines based on his laboratory test results and physical examinations.  Id.  Plaintiff's laboratory results never reached the requisite levels for antiviral therapy.  Id.  Plaintiff's HCV never reached a level that required him to be seen by a specialist under the GDC guidelines.  Id. at 5.  In fact, Plaintiff's laboratory test scores showed his liver enzyme levels would be normal for individuals without HCV.  Id.  After Dr. Augustin left CCF, his successor also determined Plaintiff was not a candidate for treatment.  Id.

---

[3]   APRI, AST, and ALT are tests which measure liver function in hepatitis patients.

Plaintiff was diagnosed with hypothyroidism and atrial fibrillation. Id. Plaintiff was seen by a cardiologist for his atrial fibrillation. Plaintiff was also sent to a hospital to have his heart issues evaluated. Id. Following these visits, Plaintiff was recommended a treatment plan to manage his atrial fibrillation. Id. While Dr. Augustin was at CCF, Plaintiff often refused treatment and medication for these conditions, including the medications recommended by a cardiologist for his atrial fibrillation. Id. Among the "General Exclusion Criteria" for candidates for antiviral therapy in the 2012 GDC HDV guidelines are "[u]ncontrolled or unstable chronic medical conditions" and "[u]nwillingnesss to consent to treatment or nonadherence with treatment plan once initiated." Id. at 6. The 2016 GDC update to the guidelines identifies "Untreated CV [cardiovascular] disease" as a "Relative Contraindication[] to HDV Therapy." Id. Therefore, Plaintiff's history of failing to adhere to treatment plans ordered by medical providers, particularly his refusal to accept his prescribed treatment for his atrial fibrillation (a cardiovascular disease), would have likely disqualified him from the antiviral therapy provided in the GDC protocol. Id.

## DISCUSSION

### I. Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse

Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies his initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Declaratory and Injunctive Relief

Plaintiff has not sued for compensatory, punitive, or nominal damages in his Second Amended Complaint. Doc. 16-1. Instead, Plaintiff only seeks declaratory and injunctive relief. Id. at 10–11. Plaintiff also requests reimbursement of court costs, presumably if he prevails in this litigation. Id. "The general rule is that a prisoner's transfer or release from a jail moots his

6

individual claim for declaratory and injunctive relief." McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984); see Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019) (noting "an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief").

Plaintiff's claims surround his medical treatment at CCF. However, Plaintiff has not disputed he is no longer incarcerated at CCF because he has been transferred to another facility. Returned mail also indicates Plaintiff has since been released from prison. Doc. 62. Plaintiff's transfer and apparent release render his claim for declaratory and injunctive relief moot. McKinnon, 745 F.2d at 1363. Additionally, it is undisputed Dr. Augustin no longer works at CCF. Thus, Dr. Augustin would lack authority to provide injunctive relief at CCF. For these reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment regarding Plaintiff's claims for declaratory and injunctive relief. Because Plaintiff has only asserted claims for declaratory and injunctive relief and not for monetary damages, the dismissal of Plaintiff's claims for declaratory and injunctive relief disposes of the entire action. Nevertheless, Plaintiff also cannot prove a violation of the ADA or Eighth Amendment, as discussed.

### III. ADA Claim

The Court permitted Plaintiff to proceed on his claim under Title II of the ADA, 42 U.S.C. § 12132 *et seq*. Doc. 13 at 1. However, the Eleventh Circuit Court of Appeals has held, "Individuals and private entities . . . are not subject to liability under Title II of the ADA." Brennan v. Thomas, 780 F. App'x 813, 822 (11th Cir. 2019) (citing Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010)). In Brennan, a prisoner claimed prison officials violated the ADA by forcing him to work jobs he was incapable of physically performing after he suffered a

serious back injury at the prison.  Id. at 817.  The Eleventh Circuit concluded the district court properly granted summary judgment in favor of the prison doctors because individuals are not considered a "public entity" under Title II of the ADA.  Id. at 822.  Because Dr. Augustin is an individual, he is not also not subject to liability under Title II of the ADA.  Id.  Therefore, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment regarding Plaintiff's Title II ADA claim.

IV. **Eighth Amendment Claim**

    A. **Legal Standard**

The United States Supreme Court has interpreted the Eighth Amendment Cruel and Unusual Punishment Clause to prohibit "deliberate indifference to serious medical needs of prisoners."  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)).  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the constitutional violation and plaintiff's injury.  Id.  The first element is an objective inquiry.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id.  (quotation and citation omitted).

The second element is a subjective inquiry.  Id.  To show deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that risk; (3) by conduct that is more than mere negligence."  Melton, 841 F.3d at 1223.  Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no

treatment at all. Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). A mere medical malpractice claim does not constitute deliberate indifference to a serious medical need. Estelle, 429 U.S. at 104. "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not amount to a constitutional violation. Melton, 841 F.3d at 1224 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Prison officials cannot be held liable under the Eighth Amendment when they provide an inmate with treatment, but the inmate simply prefers a different mode or method of treatment. Sifford v. Ford, 701 F. App'x 794, 795 (11th Cir. 2017).

The Eighth Amendment does not require inmate medical care to be "perfect, the best obtainable, or even very good." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1271 (11th Cir. 2020) (quotation omitted). Instead, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (quotation omitted).

The Eleventh Circuit recently applied this standard in the context of a HCV claim. In Hoffer, the Eleventh Circuit analyzed whether the Florida Department of Corrections' policy of monitoring HCV-positive inmates without serious symptoms and only providing expensive direct acting antiviral drugs to inmates with worsening symptoms violated the Eighth Amendment. Id. at 1266. The Eleventh Circuit reasoned federal courts should not typically second guess medical judgments when an inmate receives at least some medical attention. Id. at 1272. The court concluded the HCV-positive inmates without serious symptoms received some medical attention because prison doctors diagnose their illness, assess their risk of future harm, and regularly monitor the progression of the disease. Id. Thus, the Eleventh Circuit concluded

9

Florida's HCV monitoring policy did not constitute deliberate indifference because it did not shock the conscience. Id. at 1273.

**B.     Analysis**

Defendant argues he is entitled to summary judgment because Plaintiff cannot show deliberate indifference, the second element of an Eighth Amendment claim. Doc. 50-2 at 10. Defendant reasons he consistently monitored Plaintiff's condition and followed the applicable GDC guidelines when treating Plaintiff. Id. In support of this argument, Defendant points to the GDC guidelines and his declaration, which outlines the course of treatment he provided. Docs. 50-5, 50-6, 50-3. Defendant asserts Plaintiff's test results and examinations never indicated he needed further treatment or medications under the guidelines. Doc. 50-2 at 15. Even if Plaintiff was entitled to further treatment under the guidelines, Defendant argues Plaintiff would have been disqualified from receiving such treatment due to his failure to adhere to treatment plans prescribed for other conditions. Id.

Plaintiff cannot show Dr. Augustin was subjectively deliberately indifferent to his HCV. Plaintiff does not dispute Dr. Augustin diagnosed and regularly monitored his condition. The Eleventh Circuit has ruled monitoring, such as that Defendant performed, qualifies as some treatment and satisfies the Eighth Amendment for HCV patients not exhibiting serious symptoms. Hoffer, 973 F.3d at 1272–73. The Court should not second guess Dr. Augustin's medical judgment, particulary where Plaintiff does not dispute Dr. Augustin followed all applicable GDC guidelines and provided Plaintiff with at least some treatment. Id. at 1272. Therefore, Plaintiff cannot show an Eighth Amendment violation.

Plaintiff asserts the GDC guidelines themselves are unconstitutional. Doc. 54 at 2–3; Doc. 41 at 8–9. In his Second Amended Complaint, Plaintiff also asserts Dr. Augustin should

have referred him to a gastroenterologist for treatment.  Doc. 16-1 at 6.  In contrast, Defendant asserts Plaintiff did not need to be referred to a specialist because his HCV appeared to be under control.  Doc. 50-2 at 16–17.  For HCV-positive inmates without serious symptoms, the GDC guidelines recommend monitoring through the CCC and various tests to track the progression of the disease.  Doc. 50-5 at 4–5; Doc. 50-6 at 5–6.  The GDC guidelines are very similar to the Florida Department of Corrections' policy, which the Eleventh Circuit found constitutional in Hoffer.  973 F.3d at 1272–73; Docs. 50-5, 50-6.  Therefore, the GDC guidelines themselves are constitutional, at least as applied in this case.  Even so, the central inquiry is whether Dr. Augustin individually was subjectively deliberately indifferent to Plaintiff's medical need.  See Melton, 841 F.3d at 1223 ("In considering a deliberate indifference claim, '[e]ach individual Defendant must be judged separately and on the basis of what that person knows.'").  As explained above, a reasonable jury could not find Dr. Augustin was deliberately indifferent because he provided Plaintiff with treatment compliant with the GDC guidelines, which consisted of monitoring the condition.  Plaintiff has not produced any evidence tending to show he needed to be referred to a specialist or receive any more treatment than monitoring.

For these reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment regarding Plaintiff's Eighth Amendment claim.  Plaintiff has also moved for summary judgment.  Doc. 41.  Because Plaintiff cannot show a genuine dispute of material fact for trial holding the evidence in the light most favorable to him, he also cannot show he is entitled to judgment as a matter of law, holding the evidence in the light most favorable to Defendant.  Fed. R. Civ. P. 56(a).  Moreover, Plaintiff has not explained in his Motion why he is entitled to judgment as a matter of law.  Accordingly, I also **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

## V.  Motion for Joinder

In his Motion for Summary Judgment, Plaintiff seeks to join Debora Stewart and Sharon Lewis as defendants and Russell Vickery and "RUSSELL VICKERY, Plaintiff, [ENSLEGIS/LLC]" as plaintiffs.  Doc. 41 at 8–9.  The Court already dismissed all claims against Stewart and Lewis during frivolity review.  Doc. 13, 28.  The Court also recently denied Plaintiff's motion for joinder in which Plaintiff sought to join himself and his purported corporation as plaintiffs.  Doc. 61.  Therefore, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Joinder.

## VI.  Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001);

see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendant's Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment. I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis status* on appeal. Because I recommend the Court grant summary judgment in Defendant's favor, I further **RECOMMEND** the Court **DENY as moot** Defendant's Motion to Dismiss. I also **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Joinder asserted within his Motion for Summary Judgment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of May, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA